IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LAQUAN GIBSON, | § | |
| | § | No. 309, 2015 |
| Defendant Below-Appellant, | § | |
| | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | |
| STATE OF DELAWARE, | § | ID No. 1311003232 |
| | § | |
| Plaintiff Below-Appellee. | § | |
| | § | |

Submitted: February 10, 2016
Decided: March 11, 2016

Before **STRINE**, Chief Justice, **HOLLAND**, and **VAUGHN**, Justices.

### ORDER

On this 11th day of March 2016, it appears to the Court that:

(1) Defendant-Below/Appellant Laquan Gibson appeals from a Superior Court jury verdict finding him guilty of Possession of a Firearm By a Person Prohibited ("PFBPP"),[1] Tier II Drug Dealing,[2] and Possession of Marijuana.[3] Gibson asserts one claim on appeal. He contends that information provided by a confidential informant did not provide officers with a reasonable basis to search his residence or justify the seizure of his two vehicles. We find no merit to Gibson's appeal and affirm.

---

[1] 11 *Del. C.* § 1448.

[2] 16 *Del. C.* § 4752.

[3] 16 *Del. C.* § 4764.

(2) In October 2013, Wilmington Police Detective Joseph Leary was provided information by a confidential informant ("CI") that implicated Gibson's involvement in criminal activity. Specifically, the CI told Detective Leary that just prior to 8:00 p.m., his probationary curfew, Gibson would place controlled substances and weapons in a car. The CI explained that Gibson kept a gun in his Ford Taurus, and that Gibson and his girlfriend also owned a Mercury Mountaineer. According to the CI, Gibson believed that a car could not be searched by probation officers unless the probationer was in the car. The CI also provided Detective Leary with Gibson's full name, probation level, the reason for Gibson's probation, and the exact time Gibson's curfew began.

(3) Detective Leary conveyed this information to his partner, Probation Officer Kate Sweeney.[4] Officer Sweeney was able to verify the information provided by the CI through the probation department's computer system. Per departmental policy, Officer Sweeney then completed an arrest and search checklist and presented the checklist information via telephone to her supervisor, Craig Watson. Based on the information and the completed checklist, Officer Sweeney believed that Gibson was engaged, or about to engage, in activities that posed a substantial risk to the

---

[4] Officer Sweeney and Detective Leary were working together as members of Operation Safe Streets, a task force designed to ensure the compliance of probationers within Wilmington city limits.

2

community. Officer Sweeney subsequently applied for an administrative warrant to search Gibson's home, which was approved by Officer Watson.

(4) On November 5, 2013, Detective Leary and Officer Sweeney went to Gibson's home located at 716 East 6th Street, Wilmington, Delaware.[5] When they knocked on the door, a female, later identified as Idamae Stallings, answered from the second floor. When she asked who was at the door, Officer Sweeney answered "Probation." Three to four minutes later, Stallings answered the door and indicated Gibson was not home. At their request, Stallings let Detective Leary, Officer Sweeney, and a third officer into the residence. Soon after, Gibson was apprehended outside of the residence by Officer Brian Vettori, who had remained outside as security. Once Gibson was secured, the house was searched. The officers recovered a handgun, multiple bags of marijuana, and a bag containing white powder.[6]

(5) During the search, Detective Leary also located the keys to a Ford Taurus and a Mercury Mountaineer. Because the CI had told him that Gibson placed drugs and weapons in his cars, Detective Leary called a K-9 unit to search for additional drugs. After the K-9 detected drugs in the Taurus, both vehicles were seized and towed to the Wilmington Police Station. At the station, another K-9 detected the

---

[5] Gibson's curfew was 8:00 p.m.

[6] Stallings' two children were in the home at the time of the search, and they were subsequently turned over to Stallings' mother.

3

presence of drugs in the Mountaineer. Detective Leary then applied for and obtained a search warrant for each vehicle. During his search, Detective Leary discovered a bag of heroin in the Mountaineer and 202 bags of heroin in the Taurus.

(6) On February 3, 2014, Gibson was charged with PFBPP, two counts of Drug Dealing, Possession of Marijuana, two counts of Possession of a Firearm During the Commission of a Felony, and two counts of Endangering the Welfare of a Child. On April 2, 2014, Gibson filed a motion to suppress the evidence seized. At the hearing on the motion, Detective Leary testified as to the facts set forth above and also testified that the CI was providing tips in order to "work[] off charges."[7] Additionally, Officer Sweeney testified that she was familiar with this particular CI because prior information provided by this CI lead to an arrest. The trial court denied Gibson's motion. A jury trial commenced on January 15, 2015, and Gibson was found guilty of PFBPP, Tier II Drug Dealing, and Possession of Marijuana. This appeal followed.

(7) "We review a denial of a motion to suppress evidence after an evidentiary hearing for abuse of discretion."[8] "To the extent the claim of error implicates questions of law, we review *de novo*."[9]

---

[7] Appellee's Ans. Br. App. at B3.
[8] *Culver v. State*, 956 A.2d 5, 10 (Del. 2008).
[9] *Id.*

4

(8) "Probation and parole officers . . . may conduct searches of individuals under probation and parole supervision in accordance with Department procedures while in the performance of the lawful duties of their employment and shall execute lawful orders, warrants and other process as directed to the officer by any court, judge or Board of Parole of this State . . . ."[10] "A probation officer must have a reasonable suspicion or reasonable grounds to justify an administrative search of a residence or car."[11] "Nevertheless, this Court considers probation officers to have acted reasonably so long as they substantially comply with Delaware Department of Corrections regulations."[12]

(9) "[Delaware Department of Correction Procedure] 7.19 requires probation officers to assess any 'tip' relayed to them and independently determine if a reasonable suspicion exists that would, in the ordinary course of their duties, prompt a search of a probationer's dwelling."[13] In order to obtain an administrative search warrant, a probation officer must hold a case conference with his or her supervisor to review the following decision factors:

> (1) Sufficient reason to believe the offender possesses contraband.

---

[10] 11 *Del. C.* § 4321(d).
[11] *Murray v. State*, 45 A.3d 670, 678 (Del. 2012).
[12] *Id.*
[13] *Culver*, 956 A.2d at 7.

5

(2) Sufficient reason to believe the offender is in violation of probation/parole.
(3) Information from a reliable informant, indicating offender possesses contraband or is violating the law.
(4) Information from the informant is corroborated.[14]

In the context of an informant, Procedure 7.19 also requires the officer to assess the detail and consistency of the information, the reliability of the informant in the past, and any reasons why the informant would supply the information.[15]

(10) Gibson's claim lacks merit. A past, reliable CI provided Detective Leary with information that Gibson was in possession of a firearm and drugs. The CI also told Detective Leary that Gibson placed the firearm and drugs in his car at night. In addition to relaying information about Gibson's criminal conduct, the CI relayed specific personal details about Gibson including Gibson's full name, probation level, curfew, and the reason why he was on probation. Officer Sweeney was able to confirm that the personal information was accurate. Officer Sweeney also considered this CI reliable because this CI had provided information in the past that lead to an arrest. Additionally, the officers were aware of, and considered, the CI's reason—that he was "working off charges"—for supplying the information. The officers had a reasonable basis for searching Gibson's residence and seizing the vehicles.

---

[14] *Id.* at 10.
[15] *Id.*

6

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior

Court is **AFFIRMED.**

BY THE COURT:

_____
Justice